Court and Council. We're going to begin now with the third case of the morning, Sinha v. Bradley University. This is appeal number 20-1848. Ms. Glossy, we'll commence with you on behalf of the appellant. Thank you. May it please the Court and Council. This case involves Amit Sinha, who is a Bradley University professor. He was formerly the chair of his department, and he was removed from his chairship and denied a promotion two months after he filed a charge of discrimination. Sinha's federal complaint centered on his claim that he was demoted for opposing age discrimination and denied promotion two months after filing the discrimination charge. We are appealing the grant of summary judgment. Some of the pertinent facts I want to bring to the Court's attention are that once Dean Radson became Sinha's, Radson admitted on more than one occasion that he wanted several of the older members of the department to retire. He tried in a friendly way to talk them into it, and when that didn't work, Radson began a pressure campaign on Sinha to take actions that would make the older faculty members' work life difficult, onerous, and generally a pain to work around. Sinha resisted all of those attempts, and then he made a statement to Radson. He said, well, as long as I'm chair, I don't think these people are going to retire. Shortly after that, one of the professors in the department, Hatfield, there was a scheduling error. Sinha tried to fix it by teaching the class that she objected to. Radson refused Sinha's ability to rectify the problem. Ms. Pelosi, this is Judge Rovner. I just want to state that we have really all read the briefs, and you don't have that much time, so let's start with some questions. Okay. Okay, two points on that. First of all, we submitted affidavits from, I believe, three of the professors in the department who were also interviewed, and they indicated that there was not dysfunction in the department. Second, the notes of the investigators bears out that Radson did a hit job on Sinha. He told them that he was going downhill. He could not handle his department responsibilities. He was a dictator. He wouldn't listen to reason. And it's our view that he so poisoned that when your immediate supervisor is essentially saying you're not up for the job and you need to be removed, that that had a significant influence on the report. How do you get past, for instance, Sasaki, who in his deposition testified the decision was solely his own, and that he based it on the findings of the Faculty Grievance Committee and the Title IX investigations? Okay. I would say that if you look at the attachments and the notes from the Grievance Committee, that is where Radson admitted that he wanted to have Sinha removed. He affirmed that Sinha was discriminating against Hatfield and, again, made all these claims that he could not perform the job and needed to be removed. Ms. Glassie, do you agree that there's no evidence of bias on the part of the provost? We did not have evidence that he made age-animous statements. That is correct. Or show any evidence of bias, not just the age statement, but beyond that. I didn't see anything in the record that you were arguing that the provost who made the final decision here had any bias on his part. Your theory is a cat's paw theory through Radson. Is that fair? That is correct, except for the promotion decision that his second promotion in that Zakiah had told Sinha that he would support his next promotion even if Radson didn't want to approve it. The only thing that had changed when the second promotion came around was that Sinha had filed his charge of discrimination two months earlier. That's not the only thing that had changed. They had the results of the Title IX investigation and the results from the Faculty Grievance Committee. Those are pretty significant changes. But that's not supposed to impact the promotion decision. There's no policy that says what you do as dean impacts your promotion. The other point I wanted to make is that President Roberts... Is there anything saying that they can't consider that? Right. If you're being considered whether or not to be promoted and you have an investigation that was conducted by a committee that says your department that you had been running was dysfunctional... I think the point would be that they never... I didn't see anything in the record saying that was a fact that couldn't be decided and it seems very relevant. But they actually... Zakiah actually stated that the reason why he did not support the promotion was not because of the investigations but because supposedly Sinha did not put in a couple of letters of recommendation the second go around. Which were not required. That's where I think your case runs into some trouble because the deposition admission is that it was with regard to the 2016 circumstance not the 2017. That makes it very hard for us to conclude it's a clerical error. Also Mr. Colhase in the deposition of Mr. Zakiah. I'm looking at pages page 42. He's got before them these two exhibits the title nine investigation and the faculty grievance committee and says the answer from Zakiah is we needed to appoint an outside department chair in order to try to move the department in a more positive direction. Is that a conclusion you reached on your own with yes with the help of these documents. So the sequence doesn't seem to line up in the manner that you're advocating. What I would point out to you is that yes you're quoting off of part of the deposition that talked about the 2016 deposition. But again we put into our brief the deposition testimony talking about the 2017. And I would also point to the fact... What evidence can you point to? We've got to talk about evidence. What evidence can you point to in your complaint or discovery that was overlooked by the district court and would show that the complaint actually address the 2017 promotion decision. Not the 2016 one. It's really important. What I would have to point to is the fact that in the right to sue letter. The right to sue letter. It references the charge number for the second promotion denial. The other thing I would say about the trial court. Again the trial court said that Ratson didn't make a recommendation to remove Sinha's chair. But that's exactly what he told the grievance committee. Then he was using the grievance in order to engineer his removal. Look here is our problem. He didn't mention the 2017 promotion application in the complaint. Never filed a timely charge of discrimination with the EEOC as to the 2016 promotion denial. So you know you're arguing that the reference to the 2016 promotion was the Scrivener's error. And that the complaint actually challenged the 2017 promotion denial. That's inconsistent with the record. I don't know. Well I guess I guess my point would be that all of the you know we we did challenge the 2016 promotion denial because at that time Sinha had not been at the university for the requisite tenure. And so he had a higher burden to be promoted. And when he was denied he did not you know file a charge. It was only the sequence of events occurring after that where we get into the the issue with. But Miss Gillespie the challenge here is that your complaint alleged the denial of the promotion that was applied for in 2016. And even when the defendants raised the issue in their answer that you had not filed a timely charge of discrimination. You never sought to amend your complaint to make clear that you were talking about the 2017 as opposed to the 2016. So how do you round that. Other than to say it is a Scrivener's and it is a mistake which I admit to. But if it's a Scrivener's error the issue is were was the defendant on notice of it. So is there some prejudice. If it had just been a Scrivener's error and the whole case had been about the 2017 application then maybe we'd be in a different position. But when the defendants pointed it out in their answer you didn't attempt to cure it. And when your client was asked during his deposition about the case he specifically said the case was about the denial of the 2016 application for promotion. Given that I don't know how you could say that the defendants would be on notice that this was about the 2017 case which is what this really comes down to. Then I would I would have to refer the court to the other portions of Sinha's deposition where he was specifically asked about the denial of the 2017 promotion. And even if you know you conclude that on with regard to the promotion and I know you're saying there's a you know a problem here and admittedly so you know there's still the other part of the case dealing with the demotion. Ms. Galassi you are into your rebuttal time. Would you like to reserve. Yes please. Thank you. We'll now move to Mr. Cole Hayes on behalf of the appellee. May it please the court counsel. It's important to remember that both the faculty grievance committee and the title nine investigators were actually looking at what Professor Hatfield was complaining about which effectively was sex discrimination. They were not looking at any allegation by a biased supervisor that is in our case Branson. They were looking at this is what Professor Hatfield says that Chair Sinha did. And first the faculty grievance committee says hey this is a mess. We're going to make things worse if we do anything. The provost then says well OK but we have this allegation of sex discrimination so I'm referring it for a title nine investigation. They find no evidence by preponderance that Chair Sinha engaged in sex discrimination but they like the faculty grievance committee said this department is a mess. And there is no evidence at all that Provost Sakaki was biased in any way. So again we're back at cat's paw but there is no act and no evidence. There's no evidence of it period. There's no direct evidence. There's no circumstantial evidence. Under the plaintiff's cat's paw theory why wouldn't it be sufficient to create an issue of fact that both of those committees interviewed Dean Radson who was who plaintiff is complaining was the problem. Because the fact that the committee interviewed the dean is not an act by the dean. The traditional classic cat's paw is that the biased subordinate does something, makes a charge, makes an allegation, does something. Here both the faculty grievance committee and the title nine investigators simply interviewed him. Now the allegation is he testified or spoke falsely but there isn't anything that shows that what he was doing was based on a retaliatory animus. The plaintiff likes to go on about how the dean spent all his time going after older faculty but we're talking about a different retaliatory animus here, discriminatory animus I should say. We're talking about retaliation and there is zero evidence of that. What the plaintiff finally comes around to saying is well what other reason would there be for the dean to lie about this. He had to have a retaliatory animus but that's not the way the law works. It's the plaintiff that has to have some evidence be it circumstantial or otherwise that there was a retaliatory motive. There is no such evidence. Speaking of evidence, is there evidence in the record that the complaint in this case was challenging both the 2016 and 2017 promotion decisions or was it clearly limited to only one? Given that the issues in a case are made up by the pleadings and the pleading says 2016 and we addressed 2016, there is no evidence that that is what the plaintiff was addressing. When you get into the administrative side of the record here, it gets a little bit mushy. If you look at that September 22nd date that they referenced as a denial of the second application for promotion, that's actually the date of the interim department's chair rather neutral letter. There's no real decision on that. We addressed the administrative charge allegations in the context of that proceeding and we prevailed there. In the trial court, for whatever reason, they alleged 2016. We never hit our position that that was not timely. There was an application. It's not just a naked typo. There was an application. We addressed that. If we had to address 2017, we could have addressed 2017, but we didn't have to. They didn't raise it and it's too late now to say we want to amend to change that date. Were there interrogatory responses reflecting that the focus was on the 2017 date? Not from the plaintiff. And it's not fair for me to talk about interrogatory responses addressing the 2016 that we made because they're not part of the record. So, I believe that the court understands Bradley's position. And unless there are questions that I'd be pleased to address, I will conclude. Thank you, Mr. Cole. Hayes. Ms. Galassi will move back to you now for rebuttal. Thank you. I would just like to make a couple of points. And that is that, first of all, the counsel comments that, oh, this department is a mess. But I would point to the fact that for that same academic year, 2015 and 2016, every voting member of the department voted unanimously for SINHA to be chair. That doesn't bode well of dysfunction, especially when you take into the account the affidavits of the other professors that we submitted. Second, you know, counsel wants to point out that, well, all Radson did was be interviewed. But he sat and told a pack of lies about what SINHA did, didn't do, and how he wanted him removed. You know, it would be no different than if, well, I'm interviewing your supervisor, and he says, well, I saw Joe, who's in a minority, I think I saw him try to steal, you know, some equipment. And then the minority individual is fired. How can you not say that there is not a bad act? And unless you have any other questions, that's the conclusion of my rebuttal. Thank you, Ms. Galassi. Thank you, Mr. Kohlhase. The case will be taken under advisement.